IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| RODNEY J. PATIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-183 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Rodney J. Patio appeals the decision of the Acting Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

Plaintiff applied for DIB and SSI on January 7, 2011, alleging a disability onset date of October 1, 2007. Tr. ("R"), pp. 86, 171, 175. Plaintiff was eighteen years old at his alleged disability onset date and twenty-three years old when the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 39, 171. Plaintiff completed the ninth grade with some special education classes before dropping out of school, but school records

dated in 2008 state "none" after the notation "mild intellectual disability." R. 62-64, 192, 308. Since leaving his foster home in 2010 after a dispute with his foster parents, Plaintiff has lived in various apartments and homeless shelters. R. 64-70. Plaintiff self-reports that he has been arrested and gone to jail on five occasions for shoplifting, disorderly conduct, and violation of probation. R. 283. Plaintiff previously worked part-time for approximately one year as a cook and maintenance worker at a McDonald's prior to his alleged onset date. R. 64, 193.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 82-95. Plaintiff requested a hearing before the ALJ, R. 130-34, and the ALJ held a hearing on March 7, 2013. R. 57-81. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Dana Lesney, a Vocational Expert ("VE"). Id. On March 15, 2013, the ALJ issued an unfavorable decision. R. 39-56.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 1, 2007, the alleged onset date. (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: borderline intellectual functioning and major depressive disorder, moderate (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should avoid hazards and unprotected heights. The claimant is further limited to unskilled work and occasional interaction with the public and co-workers. The claimant has no past relevant work. (20 C.F.R §§ 404.1565 and 416.965).

2

> 5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including cleaner, street cleaner, and floor waxer. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2007, through March 15, 2013 (the date of the ALJ's decision). (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 44-52.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-7, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues in conclusory fashion that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in determining Plaintiff's impairments did not meet or medically equal Listing 12.05, 12.06, or 12.08 at step three of the sequential evaluation process, and (2) failed to properly address side effects of Plaintiff's medication. See doc. no. 12 ("Pl.'s Br."). Plaintiff also asserts, without explanation, that the Court should consider new evidence in the form of a Georgia Adoption Reunion Registry summary attached to his brief in this Court but not submitted at the administrative level. Id. at 10-11.

The Commissioner maintains that the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 13 (Comm'r's Br."). The Commissioner also argues that the new evidence attached to Plaintiff's brief may not be considered in determining whether the administrative decision is supported by substantial evidence and is not sufficient to warrant a remand under sentence six of 42 U.S.C. § 405(g). Id. at 12-13.

## II.  STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. Plaintiff Failed to Establish Disability under the Listings.

Plaintiff claims he meets or medically equals three Listings for mental disorders: (1) Listing 12.05, intellectual disability, (2) Listing 12.06, anxiety-related disorders, and (3) Listing 12.08, personality disorders. Pl.'s Br., pp. 7-10. His briefing does not comply with the Court's instructions to present "[l]egal argument, supported by specific references to the record and citations of legal authority." Doc. no. 11, p. 2. Rather, he makes these claims based on conclusory citations to the entirety of select exhibits and without reference to, or explanation as to how, the ALJ's assessment of the entire record was legally insufficient under controlling case law in the Eleventh Circuit.

Because Plaintiff's brief does not analyze the legal sufficiency of the administrative decision as delivered by the ALJ and instead simply relies on his own interpretation of select portions of the record, Plaintiff seemingly wants the Court to revisit the issue of disability *de novo*. The law does not allow the Court to do this. A determination as to whether there is substantial evidence in the record to support fact findings in a social security disability case
5

does not involve reweighing evidence, trying issues *de novo*, or substituting the Court's judgment for that of the Commissioner.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

### 1. Plaintiff Failed to Establish a Mental Impairment Satisfying the Criteria of Listing 12.05B.

Plaintiff claims he meets Listing 12.05B. Pl.'s Br., p. 7. "Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. To qualify as intellectually disabled, a claimant's condition must

satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. §12.00A; see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). Thus, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05." Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012). The criterion of 12.05B is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In the context of mental disorders, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

Plaintiff claims that he satisfies the requirements of 12.05B because he has a valid verbal or full scale IQ of 59 or less. Pl.'s Br., p. 7. The ALJ recognized Plaintiff had been tested with a full-scale IQ of 59, but went on to explain that the requisite significant deficits in adaptive functioning do not exist. R. 45. In support of this finding, the ALJ cited a November 6, 2011 Function Report wherein Plaintiff reported he had no problems with personal care, could prepare his own meals, could do chores, such as cleaning laundry and ironing, went outside daily, shops monthly, and is able to pay his bills. Id. (citing Ex. 9E, R. 228-35). The ALJ also noted Plaintiff

7

reported spending time with others, watching television, playing cards and basketball, as well as regularly going to church, the soup kitchen, and the gym. Id. In particular, Plaintiff described a typical day as eating breakfast, spending the morning listening to music and watching television, and then spending his afternoon at the park playing basketball. R. 48 (citing Ex. 4F, R. 283). Plaintiff also stated he socialized with his friends daily, gets out of the house daily, and can independently perform all household tasks. Id. (citing Ex. 4F, R. 284).

Plaintiff offers no viable argument showing he meets or equals Listing 12.05B. He claims the ALJ erred by ignoring school evidence showing an onset of intellectual disability prior to age twenty-two. Pl.'s Br., p. 6 (citing Ex. 4F). Plaintiff states that the description of his academic, developmental functional needs in his Individualized Education Plan ("IEP") dated 2008 "clearly shows an onset of the impairments and deficits in adaptive functioning." Id. Plaintiff does not identify the impairments to which he refers, and he does not acknowledge that same IEP states "none" after the notation "Mild Intellectual Disability" and states that excessive absences, both from cutting classes and personal legal issues, hindered Plaintiff's academic progress. R. 308.

In any event, the ALJ did not base his decision solely on a failure to demonstrate deficits in adaptive functioning prior to age twenty-two. As discussed above, he found that significant deficits in adaptive functioning simply do not exist, not that Plaintiff missed an age deadline. Moreover, the ALJ relied heavily on the opinion of Dr. Adrian Janit, the consultative examiner, who diagnosed borderline intellectual functioning and ruled out a diagnosis of mild mental retardation.[1] R. 287. Likewise, although there are mental health treatment notes in the record,

---

[1] Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an

8

those notes do not reveal, and Plaintiff does not cite to, any diagnosis of intellectual disability, but rather he is regularly diagnosed as "R/O borderline intellectual functioning." See, e.g., R. 336, 339, 342, 346. A diagnosis of borderline intellectual functioning "is mutually exclusive of mental retardation." Jordan, 470 F. App'x at 768-69; see also Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (finding substantial evidence to support conclusion claimant did not meet Listing 12.05C where he "was never diagnosed with mental retardation, only borderline intellectual functioning" and ability for self-care, managing money, and communicating effectively with others ruled out deficits in adaptive functioning necessary to meet Listing).

In sum, the ALJ's conclusion that Plaintiff did not establish disability under 12.05B is supported by substantial evidence. Plaintiff does not challenge the legal sufficiency of the ALJ's assessment of the record as a whole, but rather attempts to seize on certain portions of certain exhibits, not identified with the necessary specificity, to try to imply error. Moreover, to the extent Plaintiff attempts to rely on his testimony at the hearing to contradict his prior, repeated reports of self-sufficiency and involvement of social activities, (Pl.'s Br., pp. 6-7), the ALJ fully explained why Plaintiff's testimony was less than fully credible. R. 47-50. Plaintiff did not challenge those credibility findings on any basis other than in the context of Plaintiff's alleged medication side effects.[2] Moreover, for the reasons cited by the Commissioner in her brief, Plaintiff's attempted reliance on information from Easter Seals presented only to the AC is

---

individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

[2]The Court addresses those claims in Part III.B, *infra*.

9

misplaced, and in any event unhelpful, in this appeal which challenges the ALJ's decision. Comm'r's Br., p. 9 & n.2.

### 2. Plaintiff Failed to Establish a Mental Impairment Satisfying the Criteria of Listing 12.06 or 12.08.

Listing 12.06 addresses anxiety related disorders and provides that a claimant is disabled if he suffers from anxiety that "is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." 20 C.F.R. 404, Pt. 404, Subpt. P, App. 1, § 12.06. Listing 12.08 addresses personality disorders and provides that a claimant is disabled if "personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness." Id. § 12.08.

Under both Listings, a claimant meets the required level of severity if he satisfies the criteria in paragraphs A and B or A and C of the particular Listing. Id. §§ 12.00A, 12.06, 12.08. Paragraph A of each listing identifies symptoms commonly associated with such disorders, and requires the claimant to provide medically documented findings of one or more of the listed symptoms. Id. §§ 12.00A, 12.06 & 12.08. To satisfy 12.06A, the claimant must provide medical documentation of generalized persistent anxiety accompanied by three of the following: motor tension, autonomic hyperactivity, apprehensive expectation, or vigilance and scanning; persistent irrational fear resulting in a compelling desire to avoid the source of the fear; recurrent severe panic attacks occurring on average once per week;

10

recurrent obsessions or compulsions, or recurrent intrusive recollections of a traumatic experience. Id. § 12.06A. To satisfy Listing 12.08A, the claimant must provide medical documentation of "[d]eeply ingrained, maladaptive patterns of behavior associated with one of six characteristics, including persistent disturbances of mood or affect and intense and unstable interpersonal relationships and impulsive and damaging behavior." Id. § 12.08A.

Paragraph B criteria list impairment-related functional limitations that are incompatible with the ability to do any gainful activity. Id. To satisfy the criteria, a claimant must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. §§ 12.06B & 12.08B.

The term "marked" means more than moderate but less than extreme and covers a limitation that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." Id. § 12.00C; Parks *ex rel.* D.P. v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 851 (11th Cir. 2015). "[E]xacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace" qualify as "episodes of decompensation" 20 C.F.R. 404, Pt. 404, Subpt. P, App. 1, § 12.00C(4). The criterion of "repeated" episodes of "extended duration" are met when a claimant has three episodes within one year, or has an average of one episode, lasting for at least two weeks, every four months. Id.

Listing 12.06 also includes additional functional criteria known as "Paragraph C." Id. §§ 12.00A & 12.06. To satisfy Listing 12.06C, a claimant's impairment(s) must result in a

11

complete inability to function outside the area of the claimant's home. Id. § 12.06C. Only if the claimant does not meet the criteria in Paragraph B, does the ALJ apply the additional functional criteria in Paragraph C. Id. § 12.00(A).

Despite these detailed Listing requirements, Plaintiff's briefing points to nothing specific in the record that shows he satisfies either Listing 12.06 or 12.08. As to Listing 12.06, Plaintiff states, without elaboration, that "[h]is medical evidence, information from claimant and other professional health care provides [sic] supports this diagnosis" and that he has marked restrictions of activities or daily living, social functioning, and maintaining concentration, persistence, and pace as "stated above." Pl.'s Br., p. 9. As to Listing 12.08, Plaintiff states that he has been diagnosed with Induced Mood Disorder, Disruptive Behavior Disorder and has "intense and unstable" interpersonal relationships. Id. at 10. He again repeats that he has marked limitations in social functioning and maintaining concentration, persistence, or pace. Id. Plaintiff asserts without citation to any record evidence that he has been evicted nineteen times over a short period of time and cannot do anything in school or his personal life without extreme supervision. Id.

As explained above, each Listing has two parts that must be satisfied. Plaintiff has not shown that he has the requisite medical conditions for Part A of either Listing. The record does not establish Plaintiff has persistent anxiety for Listing 12.06. Indeed, even the general reference to Dr. Janit's consultative examination is not helpful to Plaintiff because Dr. Janit noted that Plaintiff was "largely nonanxious throughout the evaluation," R. 284, and Plaintiff does not point to any diagnosis in the record of a qualifying anxiety-related disorder. Likewise, as to Listing 12.08, Plaintiff points to no medical documentation of a deeply ingrained, maladaptive pattern of persistent disturbances of mood and intense and unstable

interpersonal relationships. Again, Dr. Janit's notes reflect Plaintiff reported that he "used to" have anger problems, particularly directed to his foster parents, and indeed, the IEP previously cited by Plaintiff indicates that he was well-mannered and interacted well with teachers and peers. R. 308.

Moreover, even if Plaintiff had medical documentation to satisfy the Part A criteria, he has not shown marked limitations as required for Part B criteria of both Listings. The ALJ determined Plaintiff had mild restrictions of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace. R. 45-46. In making these findings, the ALJ relied on Plaintiff's own statements in a November 16, 2011 Function Report. As explained above, Plaintiff reported no problems with personal care, could prepare his own meals, could do chores, such as cleaning laundry and ironing, went outside daily, shops monthly, and is able to pay his bills. R. 45 (citing Ex. 9E, R. 228-35). The ALJ also noted Plaintiff reported spending time with others, watching television, playing cards and basketball, as well as regularly going to church, the soup kitchen, and the gym. Id.

In addition, although Plaintiff had spent time in homeless shelters, there were also periods of time where Plaintiff lived independently in his own apartment. R. 64, 283, 317-18. Plaintiff's bald assertion that the record is void of any type of social functioning, (Pl.'s Br., p. 7), is belied by the reports of afternoons in the park, basketball games, and daily socializing with friends. R. 283-84. Indeed, as of January 2013, Plaintiff reported living in an apartment with two roommates, all of whom got along well together. R. 355. Although Plaintiff also improperly relies on information that was never presented to the ALJ to argue he can do nothing without extreme supervision, (Pl.'s Br., p. 10), that contention is belied by work records dated shortly after the ALJ issued his opinion showing that Plaintiff "[r]equires minimal supervision." R. 37.

13

The ALJ further noted Plaintiff himself reported an ability to pay attention for a long time, finish what he started, and follow written and spoken instructions. R. 46 (citing Ex. E, R. 233). Plaintiff's conclusory, unsupported assertions of marked, or at least "more than mild" restrictions in Part B criteria, are without merit, as explained in the ALJ's decision and the results of the consultative examination of Dr. Janit. R. 45-46, 281-88.

### B. The ALJ Did Not Err in His Analysis of the Alleged Side Effects of Plaintiff's Medication.

Plaintiff also argues that the ALJ erred in his consideration of alleged side effects of Plaintiff's medication, and in particular that the question to the VE did not include restrictions related to medication. Pl.'s Br., p. 11. Plaintiff testified at the administrative hearing that he takes Celexa. R. 68-69. The ALJ asked Plaintiff if the medicine made him feel better, to which Plaintiff responded, "Yes, sir, and then it really just – like I just go to sleep." R. 69. The ALJ then asked whether Plaintiff had any trouble getting his medicine. Id. There was no further questioning by the ALJ about medication, and Plaintiff's counsel's only question to Plaintiff about medication concerned what medicine he took for ADHD. R. 74-75. There was no evidence presented about alleged side effects of Plaintiff's medication or how such medicine might affect Plaintiff's ability to work. When counsel asked Plaintiff why he thought he qualified for disability, he answered that he did not know. R. 75.

The ALJ recognized Plaintiff reported in February of 2012 that he was fatigued after taking his medicine in the morning. R. 48 (citing Ex. 9F, R. 336.) Those same notes show the doctor stated Plaintiff could switch from taking his medicine in the morning to nighttime, which would help not only with the drowsiness but also help Plaintiff to sleep better. R. 336. The medication was not otherwise altered, and Plaintiff requested a refill in January of 2013,

14

stating that he did feel as good without it. R. 355. That Plaintiff testified at the hearing that he takes his medicine and then goes to sleep is entirely consistent with the treatment notes containing instructions to take the medicine at nighttime.

Plaintiff points to nothing in the record showing that fatigue from taking the Celexa had any effect on his ability to work or showing that he made any complaint to a doctor other than the one which resulted in a switch to taking the medicine at night. In effect, Plaintiff appears to argue that he did not have to show his medicine impacted his ability to work, but that the ALJ had to show it did not. However, the burden is on a claimant to prove he is disabled, and he must introduce evidence supporting a claim that his alleged symptoms, including medicinal side effects, make him unable to work. Walker v. Comm'r of Soc. Sec., 404 F. App'x 362, 366 (11th Cir. 2010) (citing Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)).

Plaintiff was represented by counsel during the administrative hearing and had the opportunity to present evidence in support of any claim of disabling side effects of his medicine. He presented no such evidence at the hearing, or in his current briefing, and the record as thoroughly reviewed by the ALJ does not support any claim of disabling medicinal side effects, or show that the ALJ erred in his assessment of Plaintiff's alleged side effects. See Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 904 (11th Cir. 2011) (collecting cases explaining ALJ not required to elicit testimony on alleged side effects of medications in cases where there is no evidence showing medicine causes side effects, including where record did not disclose concerns from doctors about side effects). The ALJ did not err on this point.

Likewise, the argument fails that the ALJ erred because the hypothetical to the VE did not contain restrictions related to drowsiness or fatigue from taking the Celexa. Pl.'s Br., p. 11. The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161. As discussed above, the record does not support a finding that any medicinal side effect impacted Plaintiff's ability to work such that it should have been included in the hypothetical to the VE, and the ALJ did not err on this point.

**C.     Plaintiff's "New Evidence" Attached to His Brief in this Court Does Not Entitle Him to a Remand.**

Lastly, Plaintiff submits additional evidence in the form of a Georgia Adoption Reunion Registry summary of the case record regarding his birth family and adoption that is attached as Exhibit A to his brief to this Court. Plaintiff cites no case law, nor puts forth any legal argument, why the Court should consider it. Plaintiff simply provides a bullet list of ailments associated with various family members and concludes, "[Plaintiff's] immediate family and relative suffered with mental disease similar to the ailments he has. His ailments are significant, affects his social interaction and renders him incapacitated." Pl.'s Br., p. 11.

A reviewing court, when presented with new evidence that was never presented for review at the administrative level, may only consider whether the new evidence necessitates remand under sentence six of § 405(g); a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007); Norton v. Comm'r of Soc. Sec., 607 F. App'x 913, 917-18 (11th Cir. 2015); see also Wilson v. Apfel, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (evidence attached to appellant's brief not properly before the court) (citing Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985) (noting general principle that court's review is limited to certified administrative record)); Walters v. Barnhart, 184 F. Supp.2d 1178, 1185 (M.D. Ala. 2001) ("The plaintiff submits to the Court medical records which she did not present to the ALJ or the Appeals Council in support of her disability claim. These records are not part of the administrative record for review by this court.").

Here, Plaintiff has never asked for a sentence six remand, and even if he were requesting such, he would have to show "good cause" for failing to produce the new evidence at the administrative level. See Ingram, 496 F.3d at 1267. Here, Plaintiff fails to provide any reason, much less "good cause," for his failure to produce the report. More importantly, as the Commissioner correctly points out, Plaintiff has not established any relevance of the information in the report to the analysis of his abilities or work-related skills or limitations.

In sum, the information in the summary report is not properly before the Court and in any event, affords Plaintiff no basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 21st day of October, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA